UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

                                                   **DECISION AND ORDER**
         v.                                                 11-CR-267

SCOTT J. BALD,

                Defendant.

The defendant, Scott J. Bald, was charged in a Petition for Offender Under Supervision, filed on January 3, 2013, with four charges of violating a mandatory condition of his supervised release requiring that he "not commit another federal, state or local crime." The Petition specifically charged that, on December 31, 2012 defendant Bald was arrested by Buffalo police and charged with the following: (1) criminal mischief (3rd), a class E felony, in violation of Section 145.05 of the New York State Penal Law; (2) petit larceny, a class A misdemeanor, in violation of Section 155.25 of the New York State Penal Law; (3) obstruction of governmental administration, a class A misdemeanor, in violation of Section 195.05 of the New York State Penal Law; and (4) possession of burglar tools, a class A misdemeanor, in violation of Section 140.35 of the New York State Penal Law.

The charges in the Petition arise from a response to a 911 call complaining

that unknown persons were illegally entering a parked car in the early morning hours of December 31, 2012, during which time Buffalo police officers found defendant Bald and an accomplice fleeing from the area. A witness identified defendant Bald as one of the individuals responsible for the break-in. At the time of the arrests, defendant's accomplice was in possession of two screwdrivers. Based upon the facts established during a violation hearing, and for the reasons stated herein, the Court finds the defendant guilty of Charge 1, Charge 2, Charge 3, and Charge 4 set forth in the Petition.

## **BACKGROUND**

A judgment in a criminal case against defendant Bald was filed on August 21, 2012. Defendant had been adjudicated guilty after a plea to Conspiracy to Possess with Intent to Distribute and to Distribute Oxycodone in violation of Sections 841(a)(1), 841(b)(1)(C), and 846 of Title 21 of the United States Code. Defendant was sentenced to 15 months imprisonment. Defendant's criminal history at the time of sentencing was Category IV.

As a part of the sentence, this Court also imposed a three (3) year term of federal supervised release. The sentence included, as a Condition of Supervision, the following mandatory charge:

The defendant shall not commit another federal, state or local crime.

Defendant served the term of imprisonment imposed by this Court and his

period of supervision commenced on November 16, 2012.  After an initial appearance on the Petition on February 20, 2013, a violation hearing was held pursuant to Federal Rule of Criminal Procedure 32.1(b)(2) on March 7, 2013.  During the hearing, the Government introduced the testimony of Buffalo Police Officers Jonathan Pietrzak and Nicholas Conrad as well as civilian witnesses James Earnest Weber and Erica Arroyo.  Defendant did not call any witnesses.  Following the hearing, both the Government and defendant submitted post-hearing findings of fact and conclusions of law.  (Dkt. Nos. 32 and 33)  The Court heard closing arguments on April 24, 2013.

The Court evaluates the evidence offered to establish a violation of supervised release by a standard of the preponderance of the evidence.  18 U.S.C. § 3583(e)(3);  *Johnson v. United States*, 529 U.S. 694, 700 (2000).  While conducting the hearing and reviewing the evidence presented at the hearing, the Court is mindful that the Federal Rules of Evidence are not applicable in revocation proceedings.  Fed. R. Evid. 1101(d)(3).  Certainly, however, the Federal Rules of Evidence are a useful guide to help the Court to make findings supported by "verified facts" and by "accurate knowledge."  *United States v. Bari*, 599 F.3d 176, 179 (2d Cir. 2010) (*quoting Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)).

After carefully observing the witnesses' demeanor and testimony, considering all of the exhibits admitted into evidence, reviewing the parties' post-

hearing submissions, and applying the preponderance of the evidence standard of proof, the Court finds the following facts.

## **FACTS**

James Earnest Weber resides at 149 Metcalfe Street, Buffalo, New York. (Dkt. No. 31, p. 64)  In the early morning hours of December 31, 2012, Weber observed motion in his neighbor's driveway that appeared suspicious.  *Id.*  Weber called 911 to report the suspicious activity.  *Id.*  Weber testified that he informed the 911 operator that he observed a tall white male wearing a black hooded-sweatshirt "going by [his] fence and into [his] neighbor's car."  *Id.*  (Dkt. No. 31, p. 64; Government Exhibit 3)

After calling 911 and reporting the suspicious activity, Weber retrieved a flashlight and walked out onto his driveway to investigate as to whether any of his property had been stolen.  (Dkt. No. 31, p. 64-65)  Weber testified that he observed two individuals in black hooded-sweatshirts walking down Metcalfe Street.  *Id*. at 65.  Weber then got in his car and attempted to follow the individuals.  However, he turned around when he saw a police car approaching so that he could speak with the officers.  *Id*. at 65.  Upon returning to his home, Weber spoke with the first officer to arrive at the scene.  (Dkt. No. 31, p. 69)  Weber then accompanied this officer, in his patrol car, to attempt to find the suspects.  (Dkt. No. 31, p. 70)  They drove from Metcalfe Street to Thomas Street

4

but were unable to locate the suspects. (Dkt. No. 31, p. 70) When the officer and Weber returned to Metcalfe Street, other Buffalo police officers had arrived at the scene. *Id*. at 71.

Officer Jonathan Pietrzak of the City of Buffalo Police Department was working an 8 p.m. to 6 a.m. patrol shift in the C District on December 31, 2012. (Dkt. No. 31, p. 6) At approximately 4:00 a.m., Officer Pietrzak was notified by radio and asked to respond to a 911 dispatch call regarding a suspicious person in the area of 150 Metcalfe. *Id*. at 7. Officer Pietrzak was told by the 911 dispatcher that a tall, white male wearing dark clothing was observed possibly breaking into a vehicle. *Id*.

Officer Pietrzak and his partner, Officer Nicholas Conrad, proceeded to 150 Metcalfe Street. (Dkt. No. 31, p. 10) There, they encountered Weber who was speaking with another officer. *Id*. Weber stated that he saw two people breaking into a car and that he had followed them to Thomas Street, before the first responding officer had arrived. *Id*. at 39. Officer Pietrzak asked Weber if he was willing to accompany him and his partner, in the back of their police car, in another attempt to find the two suspects. *Id.*

Officer Pietrzak, Officer Conrad and Weber then proceeded, in the police car, to Thomas Street. (Dkt. No. 31, p. 10-11) Around 35 Thomas Street they observed an individual fitting the description given by Weber, specifically a tall male wearing dark clothing, walking in the middle of the street. *Id*. at 10-11.

Weber stated to the officers "that's the guy". *Id*. at 10-11; 59; 66. Officer Pietrzak and Weber both testified that as soon as the individual saw the marked police car, he began to run east through the yards on Thomas Street. *Id*. at 10-11; 41; 59. Officer Conrad also testified that when the suspect saw the police cruiser, he "took off running." *Id*. at 60. The patrol car's overhead lights and siren were not activated at this time. *Id*. at 43. Officer Conrad exited the vehicle and chased after the suspect while Officer Pietrzak transmitted a radio broadcast that a white male was running eastbound on Thomas Street. *Id*. at 10-11.

Officer Conrad jumped over a fence and followed in the direction of the suspect's footprints in the snow. (Dkt. No. 31, p. 60-61) Officer Conrad jumped over a second fence, into an enclosed backyard, and then hopped a third fence towards Metcalfe Street, in pursuit of the suspect. *Id*. Officer Conrad testified that the suspect ultimately emerged at 150 Metcalfe, where other responding officers were waiting. *Id*. at 61. The other officers apprehended the suspect at that time. *Id*.

Officers Conrad and Pietrzak then returned to 150 Metcalfe. (Dkt. No. 31, p. 60-21) The suspect initially refused to provide his name and other pedigree information to the arresting officers. *Id*. at 21-22. However, Officers Conrad and Pietrzak recognized the suspect as defendant Bald based upon a traffic stop they had with defendant two days prior. *Id*. at 62. Defendant ultimately provided the correct pedigree information to officers approximately 20 to 30 minutes after his

6

arrest. *Id*. at 22. Officer Pietrzak asked defendant what he was doing out at 4:00 a.m. on December 21. *Id*. at 24. Defendant responded that he was looking for his dog, but he did not have a dog leash with him. *Id*. at 25. Officers seized a dark purple hooded-sweatshirt and gloves from defendant. (Dkt. No. 31, p.15-17; Government Exhibits. 6 and 7)

Around this same time, the second suspect was apprehended in the yard of 35 Thomas Street. (Dkt. No. 31, p. 44) Officer Pietrzak described the second suspect as short, light-skinned and wearing dark clothing. *Id*. at 14. Officer Pietrzak testified that defendant is well over six feet (6') tall and that the second suspect is approximately five foot six inches (5'6") or five foot seven (5'7") inches tall. *Id*. Items seized from the second suspect included two screwdrivers and a flashlight. *Id*. at 47-48; Government Exhibit 9.

Erica Arroyo testified that she resides at 141 Metcalfe Street, Buffalo, New York. (Dkt. No. 31, p. 74-75) She indicated that police officers knocked on her door at approximately 4:30 a.m. on the morning of December 31, 2012 and informed her that her car had been broken into. (Dkt. No. 31, p. 75) Arroyo had not given anyone permission to enter her car. *Id*. at 76. Upon examining her vehicle, she observed that the driver's side window had been ripped open and the radio was torn out. *Id*. Arroyo testified that the hood of the car was open and that someone had clipped wires underneath the hood. *Id*. at 77. Arroyo explained that she believes the wires under her hood were cut in order to prevent her car

alarm from activating. *Id*.

Arroyo provided receipts from Best Buy indicating that the radio which was stolen from her car cost $450.00 and that the car alarm which was damaged cost $99.00. (Dkt. No. 31, p. 79; Government Exhibit 8) The repair estimate for the car totaled $695.34, and the estimate to repair the broken window totaled $722.30. (Dkt. No. 31, p. 80; Government Exhibit 8) Arroyo testified that she does not have the funds necessary to replace the car radio or car alarm, nor can she afford to repair her car or car window. *Id*. at 78.

As a result of his arrest on December 31, 2012, defendant was charged with criminal mischief in the third degree (New York State Penal Law Section 145.05(2)); petit larceny (New York State Penal Law Section 155.25); possession of burglary tools (New York State Penal Law Section 140.35); and obstructing governmental administration (New York State Penal law Section 195.05). (Dkt. No. 31, p. 79)

## **FINDINGS**

After observing the testimony of all of the witnesses during the violation hearing, carefully weighing the credibility of the testimony, and reviewing the post-hearing briefs, the Court finds, by a preponderance of the evidence, that through both his own conduct and as an aider and abettor, defendant Bald committed criminal mischief in the third degree, petit larceny, possession of burglar's tools

8

and governmental obstruction in the third degree.[1]

The credible testimony taken at the hearing demonstrates that defendant and an accomplice broke into a car on Metcalfe Street in the early morning hours of December 31, 2012. Weber credibly testified that he observed suspicious activity in front of his home and called 911. Weber reported to the 911 operator that he saw a tall white male wearing dark clothing entering his neighbor's car. Weber testified that he went outside to investigate the activity, and to determine whether any of his property had been stolen. Weber testified that he observed two individuals in black hooded-sweatshirts walking down Metcalfe Street. Defendant is a white male. The hearing testimony indicated that defendant is over six feet (6') tall and that at the time of his arrest, he was wearing a dark-colored hooded-sweatshirt. Indeed, when Weber was in the patrol car with Officers Pietrzak and Conrad, he identified defendant as the individual he observed entering his neighbor's car. Weber pointed to defendant and stated "that's the guy."

Arroyo, Weber's neighbor, credibility testified as to items stolen from and damage done to her car. The other suspect arrested that evening, and observed with defendant on Metcalfe Street, was found with screwdrivers and a flashlight.

---

[1] Section 20 of the New York State Penal Law (criminal liability for conduct of another) provides the following: when one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.

The Court notes that screwdrivers are instruments commonly used in car burglaries.

Defendant's own conduct further supports a finding that he committed the instant offenses. Credible testimony from Officers Pietrzak and Conrad as well as Weber reveal that defendant fled from police immediately upon seeing the marked police cruiser. At the time of his arrest his arrest, defendant refused to provide pedigree information to officers for almost half an hour. The Court further notes that the excuse defendant provided police as to why he was outside at 4:00 a.m. in December is highly suspicious at best. Defendant informed police that he was looking for his dog, yet he did not have a dog leash. Further, it defies logic that an innocent individual, looking for their dog, would flee from a marked police car and initially refuse to provide any identifying information to police officers.

Defendant argues that the Government has not demonstrated, by a preponderance of the evidence, that he committed the offenses charged. In support, defendant notes that Weber reported seeing an individual in a black hooded-sweatshirt. Defendant contends that the other individual arrested that evening was wearing a black hooded-sweatshirt, while defendant's sweatshirt was purple. The Court has examined the hooded-sweatshirt wore by defendant the night in question, and finds that it is a dark purple color which could easily be mistaken for black when observed outside, in the dark, at 4:00 a.m. on a winter morning.

Defendant also notes that it was the other individual, not defendant, who was found with the paraphernalia associated with breaking into a car, including screwdrivers and a flashlight.  Defendant submits that neither officer observed defendant in the company of this other suspect.  However, Weber provided credible testimony that he observed defendant and the other suspect walking together down Metcalfe Street.

While defendant asserts that lack of sleep and vision issues may have compromised Weber's ability to positively identify defendant, the Court credits Weber's testimony that, while in the patrol car with Officers Pietrzak and Conrad, he identified defendant as the individual entering his neighbor's car.  Further, based upon the facts that defendant fit the general description given to the 911 operator, was identified by Weber, was out at 4:00 a.m. on December 21 with no plausible explanation for his behavior, fled from police, and refused to identify himself, the only reasonable inference to be drawn is that defendant and an accomplice burglarized Arroyo's car.

Based upon all of the evidence at the hearing, the Court specifically finds by a preponderance of the evidence that defendant Bald is guilty of all four charges set forth in the Petition, which include: (1) criminal mischief in the 3rd degree, in violation of Section 145.05 of the New York State Penal Law; (2) petit larceny, in violation of Section 155.25 of the New York State Penal Law; (3) obstruction of governmental administration, in violation of Section 195.05 of the

New York State Penal Law; and (4) possession of burglary tools, in violation of Section 140.35 of the New York State Penal Law.

At the close of its case, the Government requested that, if the Court were to find defendant guilty of the Charges set forth in the Petition, the Court require defendant to pay restitution to Arroyo for the items stolen and damage done to her automobile. The Court will address the Government's request at the time of sentencing.

## **CONCLUSION**

For these reasons, the Court finds the defendant, Scott Bald, has violated the mandatory conditions of his supervised release that he not commit another federal, state or local crime as alleged in Charge 1, Charge 2, Charge 3, and Charge 4 of the January 3, 2013 petition for Offender Under Supervision.

Sentencing for defendant's supervised release violations will be held on June 11, 2013 at 12:30 p.m. The United States Probation Office shall complete a report by June 6, 2013.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: May 9, 2013